## LUCY S. BRIGHAM *vs.* JOHN L. ROSS.

Hartford Dist., Jan. T., 1887. PARK, C. J., CARPENTER. PARDEE, LOOMIS and GRANGER, Js.

The owners of a tract of land extending three quarters of a mile along a river bank, with a fall of fourteen feet within its limits, sold a small outside lot lying next to it, with a right to carry the water from the river through the riparian tract to a mill on the outside lot and thence to return it to the river through the riparian tract, the canal to be made in the most convenient place, doing the least damage. Held that the deed conveyed a right to the entire fall of the river between the upper and the lower lines of the riparian tract.

[Argued January 4th—decided February 4th, 1887.]

ACTION for setting back water upon the plaintiff's mill privilege; brought to the Superior Court in Windham County and tried to the court before *Andrews, J.* The following facts were found by the court:

Prior to the first day of June, 1807, Elisha Brigham, Spafford Brigham and Elnathan Brigham were the owners of a large tract of land in the town of Mansfield, containing about one hundred and seventy-five acres, which was bounded westerly by the Willimantic river, and which extended along the river nearly or quite three fourths of a mile. On that day they conveyed to Stephen Brigham, Royal Storrs, Ebenezer Root, Titus Gurley and Asher Gurley, a lot lying outside of this tract and adjoining it, containing about three acres and eighteen rods, the deed containing the following provision with regard to the use of water from the river: " And also we, the said grantors, do by these presents give and grant unto them, the said grantees, and their heirs and assigns forever, the right, privilege and benefit of opening a ditch on our land in the most convenient place, twelve feet wide, with proper and convenient room to throw the earth, to convey the water from Willimantic river to the aforesaid premises, for the purpose of carrying a grist-mill, saw-mill, and any other water works that may be erected on the prem-

ises ; and also the like liberty is hereby given to said grantees to open a sufficient and proper ditch to drain the water from the above premises to the said river ; said ditch to be made in the most convenient place, doing the least damage."

The land conveyed does not itself anywhere bound on the river. It is clear, however, that both the grantors and the grantees intended to establish a mill-seat, and to appropriate all the fall in the river as far as the whole tract extended to the operation of mills and machinery. The piece of land described in the deed lies along and upon a natural embankment, where the water of the river, by means of a canal, can be easily and advantageously applied. At that date there was no mill on the river near that place. The grantors were not millers, mechanics or manufacturers. The deed was at once put upon record, and the grantees took possession of the land and of all the rights therein conveyed to them. They erected a mill on the land, put in machinery and a water-wheel to operate the same, excavated a canal to convey the water from the river to their mill, and dug a suitable ditch to drain the water from their mill back to the river after it had passed over their water-wheel. They took the water from the river by the canal near the upper line of the land owned by the grantors, and returned it again to the river by the ditch near the lower line of the grantors' land. From that time to the present some kind of a mill has been in operation at the privilege so created. A grist-mill, a sawmill, a silk factory, a cotton factory, a shoddy mill, and a mill for the manufacture of organ pipes, have found constant employment at the place for the eighty years since the deed was given.

By sundry conveyances the land granted by the deed and all the rights of water and all other rights conveyed thereby have come to and are now owned by the plaintiff. During all the time since the deed was made none of the rights granted have been conveyed away or lost by adverse use ; so that whatever the immediate grantees might lawfully have done with regard to the digging, maintaining, deepening or repairing the canal, or in operating the water power, the plaintiff may lawfully do.

At any given stage of the water in the river the difference in level between the top of the water at the point where it is taken from the river, and the top of the water at the place where it is returned to the river, is about fourteen feet and four inches.

Till within a few years a breast wheel has been in use at the plaintiff's privilege. This kind of a water-wheel requires some fall below it, so that the water as it falls from the wheel may be quickly and freely discharged. If this is done the greatest amount of power is obtained and the fall below the wheel is made to contribute thereto as efficiently as the fall above the wheel. In order to secure this free discharge of the water the wheel at this mill was so placed that its lower rim was about twelve feet below the water in the river at the head of the canal, leaving about two feet and four inches for the fall below the wheel. All the fall of the entire privilege was in this way utilized. Of the fall below the wheel four inches was between the lower rim of the wheel and the highest place in the bottom of the ditch, and about twenty-four inches was in the ditch itself. The highest place in the bottom of the ditch was near the lower line of the plaintiff's land. The plaintiff and her grantors have from time to time been accustomed to clean out the ditch and remove the obstructions therein for the purpose of obtaining all the power there was at the privilege. There was no evidence, however, that they had ever dug out the bottom of the ditch for the purpose of deepening it.

The defendant is the owner of a mill and a mill privilege on the Willimantic river about three miles lower down the river than the plaintiff's privilege. In 1869 he raised the dam at his privilege three feet higher than it had ever been before. The flowage line from the top of his dam, at its present height, is twenty inches above the bottom of the river at the mouth of the plaintiff's ditch; that is, when the water in the river is twenty inches deep then the defendant's dam will set back the water of the plaintiff's pond just to the surface of the water in the river at the mouth of the plaintiff's ditch; and whenever the water in the river is of a

depth less than twenty inches, and the defendant's pond is full, then the water of his pond will set back into the plaintiff's ditch and obstruct the flow of the water from her mill into the river and lessens the amount of the fall at her privilege by just so many inches as the water in the river is less than twenty inches in depth.

Times of drouth occur almost every year when the water in the river falls to a depth of less than twenty inches; sometimes it falls so low that it is not more than two or three inches deep. The defendant at such times has suffered his pond to be full of water.

Upon these facts the court rendered judgment for the plaintiff, and the defendant appealed.

*J. L. Hunter*, for the appellant, contended that the fall conveyed was only that between the upper line of the riparian tract and the lower line of the lot conveyed, which was much above the lower line of the grantors' land, the ditch provided for being described as "a sufficient and proper ditch to drain the water from the above premises to the river," language not at all appropriate to the granting of an additional fall below the land conveyed; citing *M' Calmont* v. *Whitaker*, 3 Rawle, 84; *Knapp* v. *Douglas Axe Co.*, 13 Allen, 1; Angell on Watercourses, § 95; Washburn on Easements, 245.

*J. M. Hall*, for the appellee.

PARK, C. J. This case depends upon the construction to be given to the deed to the plaintiff's grantors of June 1st, 1807. That deed conveyed a tract of land by particular description to the grantees, their heirs and assigns, and then proceeded as follows: "And also the right, privilege and benefit of opening a ditch on our land in the most convenient place, twelve feet wide, with proper and convenient room to throw the earth, to convey the water from the Willimantic river to the aforesaid premises, for the purpose of carrying a grist-mill, saw-mill, and any other water works that may be

erected on the premises; and also the like liberty is hereby given to said grantees to open a sufficient and proper ditch to drain the water from the above premises to the said river; said ditch to be made in the most convenient place, doing the least damage."

The case finds that the plaintiff is the owner of all the rights conveyed by the deed; that when the deed was given the grantors owned a tract of land bounded westerly for about three fourths of a mile on Willimantic river; that from the upper to the lower line of this tract there was a fall of about fourteen feet and four inches in the river; that the premises conveyed lay outside of and contiguous to this tract, and were of much smaller extent; that the grantees went into possession of the premises conveyed, built a mill upon them, and used all the fall of the river in the running of the mill, drawing the water from it at the upper end of the tract and returning it at the lower end, and that from the time the deed was given to the present time all the fall has been so used by the original grantees and those holding under them.

We think the construction which the parties themselves have put upon the deed for this long period, under which the plaintiff and his grantors have claimed and used the entire fall from the upper to the lower end of the tract, is the proper one.

The deed contains no reservation of the fall, no limitation of the right conveyed, but on the contrary uses language adapted to a conveyance of the entire fall on the grantors' land. The grantees had the right to take the water of the river to their mill from the upper line of the grantors' land as they did, and return it to the river at the lower extremity of their land, for by the terms of the deed they were required to consult only their own convenience in the matter.

Besides this, the entire fall of the river on the grantors' land was only fourteen feet and some inches, scarcely enough for one mill privilege. Obviously, if only a part of the fall was conveyed there would be almost a certainty of loss. There could have been therefore no motive on the part of

the grantees to purchase anything less than the entire fall, but a strong motive to the contrary. That such must have been their intention is therefore not only probable, but the practical construction of the deed given to it at the time shows that both parties so then understood it.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.